AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

MADISON REALTY CAPITAL, L.P.

**SUMMONS IN A CIVIL ACTION**

V.

THOMAS E. MORRIS

CASE NUMBER:

**U8 CIV 6273**

TO: (Name and address of Defendant)

Thomas E. Morris
1001 Flower Mound Road
Flower Mound, Texas 75028

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

LEO V. LEYVA, ESQ.
Cole Schotz Meisel Forman
 & Leonard, P.A.
900 Third Avenue - 16th Floor
New York, New York 10022

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

CLERK

(BY) DEPUTY CLERK

DATE

JUL 1 1 2008

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____      _____
                    Date                           *Signature of Server*


                                        _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

JUDGE PRESKA

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MADISON REALTY CAPITAL, L.P.,

               Plaintiff,

    v.

THOMAS E. MORRIS

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.

**COMPLAINT**

      Plaintiff, Madison Realty Capital, L.P. ("Madison," "Payee," or "Lender"), by its attorneys, Cole, Schotz, Meisel, Forman & Leonard P.A., as and for its Complaint against Defendant, Thomas E. Morris ("Defendant" or "Guarantor"), alleges and says as follows:

<u>**Nature of the Action**</u>

1.     Through this action, Madison seeks damages against Defendant arising in connection with an $18,750,000 loan ("Loan") from Madison to SW Dallas, L.P., and Northgate Prime, L.P. (hereinafter collectively referred to as the "Borrowers"). To induce Madison to make the Loan, Defendant personally guaranteed performance of the Borrowers' obligations under the Loan documents. Notwithstanding the Borrowers' defaults thereunder, which ultimately resulted in the acceleration of the Loan debt, Defendant has failed and refused to comply with the terms of his personal guaranty and has otherwise shirked his financial obligations to Madison. Currently, there is due and owing from Defendant to Madison the principal amount of $18,750,000 together with default interest, late charges, cost of collection and such other charges and costs as set forth in the Loan documents.

### The Parties

2.      Madison is, and at all relevant times hereinafter mentioned was, a limited partnership organized and existing under and by virtue of the laws of the State of Delaware, having an address at 825 Third Avenue, 37th Floor, New York, New York 10022.

3.      Thomas E. Morris is an individual residing at 1001 Flower Mound Road, Flower Mound, Texas 75028, and, upon information and belief, is the president of the general partner of both SW Dallas, L.P. and Northgate Prime, L.P.

### Jurisdiction and Venue

4.      The Southern District of New York has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

5.      Jurisdiction is proper in the Southern District of New York because Defendant signed a guaranty consenting to the jurisdiction of the United States District Court located in the Borough of Manhattan in New York City, New York.

6.      Venue is proper in the Southern District of New York because Defendant signed a guaranty irrevocably waiving any objection he may have to venue.

### The Relevant Provisions of the Note and Guaranty

### The Note

7.      On July 19, 2007, Borrowers executed and delivered to Madison a promissory note (the "Note") to secure payment of a $18,750,000.00 loan together with interest thereon, and

other charges, fees, and expenses as more fully set forth in the Note. (A true copy of the Note is

attached hereto as **Exhibit A.**) The terms of the Note are incorporated herein by reference.

8.      The indebtedness evidenced by the Note is secured by certain mortgages

consisting of: (i) Deed of Trust and Security Agreement dated July 19, 2007, encumbering

certain real estate, including, without limitation, the premises located at 3662 W. Camp Wisdom,

Dallas, Texas; and (ii) Mortgage and Security Agreement dated July 19, 2007, encumbering the

premises located at 1800 NE Evangeline Thwy, Lafayette, Louisiana; (collectively, hereinafter

referred to as the "Mortgages"). The terms and conditions of the Mortgages are incorporated by

reference in the Note.

9.      Pursuant to the Note, the Borrowers covenanted and agreed to pay Madison all

sums due and owing thereunder before the earlier of: (i) July 18, 2008, or (ii) such sooner date,

by acceleration or otherwise, as set forth in the Note. The Note provides, in pertinent part, as

follows:

> [O]n the Maturity Date the entire outstanding principal balance of
> this Note, together with all accrued and unpaid interest through the
> Maturity Date at the Interest Rate, and all other sums payable to
> the holder of this Note . . . shall become due and payable.
>
>                              * * *
>
> The term "**Maturity Date**" as used in this Note shall mean the
> earlier of (i) July 18, 2008, or (ii) such sooner date, by acceleration
> or otherwise, as may be applicable pursuant to the terms hereof, at
> which time the entire Debt shall become due and payable.
>
> (See Note at pp. 1-2.)

10.     The Note further provides that the Debt (as defined therein) shall become

immediately due and payable to Madison, at its option, upon the occurrence of any default under

the Loan documents without notice of default or notice of intention to accelerate. The Note

specifically provides, in pertinent part, as follows:

> It is hereby expressly agreed that the entire Debt shall become
> immediately due and payable at the option of Payee on the
> happening of any default or event by which under the terms of this
> Note, the Mortgage or Other Security Documents, the Debt may or
> shall become due and payable, and that all of the terms, covenants
> and provisions contained in this Note, the Mortgage or the Other
> Security Documents which are to be kept and performed by the
> Maker are hereby made a part of this Note to the same extent and
> with the same force and effect as if they were fully set forth herein.
> The Payee hereof may exercise this option to accelerate during any
> default by the Maker regardless of any prior forbearance. Maker
> hereby waives any requirement for notice of default or notice of
> intention to accelerate.

> (See Note at p. 2-3)

11.    Pursuant to the Note, Borrowers are obligated to pay Madison interest at the

annual rate of eleven and one-half percent (11.50%), per annum or three and one quarter percent

(3.25%) plus the Prime Rate (the "Interest Rate") from the date of this Note to the Maturity Date.

The Note further provides that interest shall be due monthly and shall be paid monthly in arrears,

commencing on September 1, 2007, and thereafter on the first day of each month until the

Maturity Date (as defined in the Note).

12.    In the event any installment of principal, interest or other sums due under the

Loan documents is not timely paid, the Note provides that a late charge of ten percent (10.00%)

shall be assessed against Borrowers, which shall be immediately due and payable to Madison.

The Note specifically provides, in pertinent part, as follows:

> If any installment of principal, interest or other sums due
> hereunder or under the Mortgage or any Other Security Document
> are not paid within five (5) days from the date which same are due,

the Maker shall pay to the Payee a late charge of ten percent
(10.00%) of such unpaid installment as a late payment charge, such
late charge to be immediately due and payable without demand by
the Payee.

(See Note at p. 3.)

13.     Upon the occurrence of an Event of Default, the Note provides that the Borrowers

must pay Madison interest on the entire Debt in the amount of twenty-four percent (24%) per

annum from the date of default until the receipt and collection of the Debt.  The Note specifically

provides, in pertinent part, as follows:

Maker does hereby agree that upon the occurrence of an Event of
Default (as such capitalized term is defined in the Mortgage), or
upon the failure of Maker to pay the Debt in full on the Maturity
Date, Payee shall be entitled to receive and Maker shall pay
interest on the entire Debt at the rate of twenty-four (24%) percent
per annum or at the maximum rate of interest which Maker may by
law pay, whichever is lower (the "Default Rate"), to be computed
from the occurrence of the Event of Default until the actual receipt
and collection of the Debt.

(See Note at p. 5.)

14.     Each of the following occurrences, among others, constitutes an Event of Default:

(a) "if any portion of the Debt is not paid within five (5) days from the date same is due and

payable;" (g) "if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be

appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if

any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law,

or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by,

Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor

or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or

proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the

same not being discharged, stayed or dismissed within thirty (30) days;" or (k) "if Mortgagor

shall be in default under any other term, covenant or condition of the Note, this Agreement or the

Other Security Documents."

## **The Guaranty**

15.     To induce Madison to make the Loan, by Guaranty dated July 19, 2007, (the

"Guaranty"), Defendant absolutely and unconditionally guaranteed payment of all obligations

and liabilities of Borrowers arising under the Note.  (A true copy of the Guaranty is attached

hereto as **Exhibit B.**)  The terms of the Guaranty are incorporated herein by reference.  The

Guaranty specifically provides, in pertinent part, as follows:

> [Guarantor], jointly and severally (if more than one) hereby
> absolutely and unconditionally guarantees to Lender the prompt
> payment of claims of every nature and description of Lender
> against Borrower and any and every obligation and liability of
> Borrower to Lender of whatsoever nature and howsoever
> evidenced, whether now existing or hereafter incurred, whether
> originally contracted with Lender, or subsequently acquired by
> Lender, in whole or in part, whether direct or indirect, absolute or
> contingent, secured or not secured, matured or not matured,
> including, but not limited to those payments, obligations and
> liabilities contained in the Note . . . .

> (See Guaranty at p. 1.)

16.     Pursuant to the Guaranty, Borrowers covenanted and agreed to faithfully perform

all obligations under the Note including, without limitation, all damages sustained by Madison as

a result of Borrowers' defaults thereunder.  Defendant further agreed to pay all attorneys' fees

and costs incurred by Madison in enforcing the Guaranty.  The Guaranty specifically provides, in

pertinent part, as follows:

Guarantor hereby covenants and agrees to and with Lender, its
successors and/or assigns, that if Borrower shall at any time default
in the payment or performance of the Obligations, Guarantor, in
each and every instance, shall and will forthwith pay such
Obligations to the Lender, its successors and assigns, and shall and
will forthwith faithfully perform and fulfill all of the Obligations,
and will forthwith pay to Lender any and all damages that may
arise as a result of any default by Borrower under any of the
Obligations (including, without limitation, all reasonable attorneys'
fees, disbursements and court costs suffered or paid by Lender in
any action or proceeding between Lender and Borrower, between
Lender and Guarantor or between Lender and any third party or
otherwise) caused by any such default and/or by the enforcement
of this Guaranty.

(<u>See</u> Guaranty at p. 1.)

17.    Pursuant to the Guaranty, Defendant waived notice of default and presentment of

demand.  The Guaranty specifically, provides, in pertinent part, as follows:

The Guarantor hereby waives (a) notice of acceptance of this
Guaranty and of the making of any loan or any advance to
Borrower; (b) presentment and demand for payment of the
Obligations or any portion thereof; (c) protest and notice of
dishonor or default to the Guarantor or to any other person or party
with respect to the Obligations or any portion thereof, (d) all other
notices to which the Guarantor might otherwise be entitled; and (e)
any demand for payment under this Guaranty.

(<u>See</u> Guaranty at p. 2.)

18.    As set forth in the Guaranty, Defendant also waived notice and demand from

Lender with respect to the payment of costs and expenses associated with pursuing an action to

collect the Debt.  The Guaranty specifically provides, in pertinent part, as follows:

The Guarantor agrees that, with or <u>without notice or demand</u>, it
shall reimburse Lender for all costs and expenses (including,
without limitation, reasonable attorneys fees, disbursements and
court costs) incurred by Lender in connection with any action or
proceeding brought by Lender to enforce the obligations of the
Guarantor under this Guaranty.

(See Guaranty at p. 1 (emphasis added).)

### Defendant's Breach of the Guaranty

19.     As a result of Borrowers' non-compliance with, among other responsibilities, its monthly interest payment obligations under the Note, on April 1, 2008, Madison placed Borrowers and Guarantor on notice of the continuing Events of Default and demanded that Borrowers immediately comply with its obligations under the Loan Documents.

20.     Despite such demand, Borrowers and Defendant failed to comply with their obligations under the Loan Documents.  By virtue thereof, Madison exercised its right to declare the outstanding principal balance due under the Note, in the amount of $18,750,000 together with all accrued interest thereon and other charges, immediately due and payable.  Madison sent a notice of acceleration and notice of foreclosure to Borrowers and Guarantor on May 12, 2008, wherein Madison noticed the property owned by SW Dallas, L.P. for foreclosure on June 3, 2008.

21.     On June 2, 2008, Mortgagor/Borrower SW Dallas, L.P. ("Dallas") filed for bankruptcy; thus creating another Event of Default pursuant to the express provisions of the Mortgage incorporated in the Note.

22.     As of today, there is justly due and owing to Madison upon the Guaranty, the principal amount of $18,750,000, together with all accrued interest thereon and late charges, including interest at the Default Rate of Interest (as defined in the Note), costs of collection, and attorneys' fees and expenses, as provided for in the Note and Guaranty, which sums are due and owing in addition to any usual costs and allowances to which Madison may be entitled and

awarded under the Note, the Guaranty, or any law or statute applicable to this action.  No part of said amount has been paid by Borrowers or Defendant.

## Claims For Relief

## As For a Cause Of Action

23.     Madison repeats and realleges each and every allegation in the preceding paragraphs as if set forth at length herein.

24.     Pursuant to the terms of the Guaranty, and as a result of the Borrowers' default under the Note, Madison is entitled to payment, in full, from Defendant, THOMAS E. MORRIS.

25.     Defendant, THOMAS E. MORRIS is in default of his obligations to Madison by reason of his failure to make payment to Madison pursuant to the terms of the Guaranty.

26.     Defendant, THOMAS E. MORRIS is liable to Madison for the full amount outstanding under the Note, together with default interest, late charges, costs of collection and other expenses incurred by Madison.

27.     As a direct and proximate result of Defendant's material breach of the Guaranty, as aforesaid, Madison has sustained substantial damages.

28.     Madison reserves the right to amend its complaint to include all default interest, late charges, attorneys' fees and other costs set forth in the Note and Guaranty as of the time of trial.

**WHEREFORE**, MADISON REALTY CAPITAL, L.P. hereby demands judgment against Defendant, THOMAS E. MORRIS, as follows:

(a) Judgment in the principal amount of $18,750,000, together with all accrued interest thereon, late charges, costs of suit, attorneys' fees; and

(b) For such other, further and different relief as the Court may deem just, proper and equitable.

Dated:  New York, New York
        July 10, 2008

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Plaintiff,
Madison Realty Capital, L.P.

By:_____
    Leo V. Leyva
    900 Third Avenue, 16th floor
    New York, NY 10022-4728
    (212) 752-8000

Exhibit A



**NOTE**

$18,750,000.00

Dated: Grand Prairie, Texas<br>as of July 19, 2007

    **NOTE** (hereinafter, the "**Note**") made as of the 19th day of July, 2007, by **SW DALLAS, L.P.**, a Texas limited partnership and **NORTHGATE PRIME, L.P.**, a Texas limited partnership, each having an address at 2911 E. Division Street, Suite 411, Arlington, Texas 76011 (hereinafter collectively, the "**Maker**") for the benefit of **MADISON REALTY CAPITAL, L.P.**, a Delaware limited partnership, its successors and/or assigns, as their interests may appear, (the "**Payee**"), having offices at 825 Third Avenue, 37th Floor, New York, New York 10022.

    **FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at 825 Third Avenue, 37th Floor, New York, New York 10022, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of Eighteen Million Seven Hundred Fifty Thousand and 00/100 Dollars ($18,750,000.00), together with interest thereon at the Interest Rate, calculated in the manner hereinafter set forth from and including the date of this Note to the date this Note is paid in full, as follows:

    A.  On the date hereof, interest on the principal sum of this Note from the date hereof to August 1, 2007 at the Interest Rate.

    B.  Thereafter, interest only at the Interest Rate on the outstanding Principal Balance shall be due monthly and shall be paid monthly in arrears, commencing on September 1, 2007, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (each such monthly payment, a "**Monthly Payment**").

    C.  Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note, the Mortgage or Other Security Documents (as hereinafter defined)) shall become due and payable.

For the purposes of this Note, these terms shall be defined as follows:

    1.  The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to the higher of (i) Eleven and One-Half Percent (11.50%), per annum, or (ii) Three and One-Quarter Percent (3.25%) plus the Prime Rate (the "Interest Rate") from the date of this Note to the Maturity Date. Changes in the Interest Rate to be charged hereunder based on the Prime Rate shall take effect immediately upon the occurrence of any change in the Prime Rate.

    2.  The term "**Prime Rate**" shall mean the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Column in The Wall Street Journal or if The Wall Street Journal fails to publish such rate, such other publication as Payee shall designate in its sole

discretion). A certificate made by an officer of Payee stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The Prime Rate is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Maker acknowledges and agrees that Payee has made no representations whatsoever that the Prime Rate is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. In the event that the concept of the Prime Rate shall no longer exist, then the Prime Rate shall be deemed to be the Prime Rate as last reported in The Wall Street Journal.

3.    The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

4.    The term "**Maturity Date**" as used in this Note shall mean the earlier of (i) July 18, 2008 or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

5.    The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

6.    The term "**Mortgage**" shall mean collectively that certain (i) Deed of Trust and Security Agreement dated the date hereof in the principal amount of $18,750,000.00, encumbering premises located at 3662 W. Camp Wisdom, Dallas Texas; and (ii) Mortgage and Secuirty Agreement dated the date hereof in the principal amount of $18,750,000.00, encumbering premises located at 1800 NE Evangeline Thwy, Lafayette, Louisiana.

7.    The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the Loan.

Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mortgage or Other Security Documents.

Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

It is hereby expressly agreed that the entire Debt shall become immediately due and payable at the option of Payee on the happening of any default or event by which under the terms of this Note, the Mortgage or the Other Security Documents, the Debt may or shall become due and payable, and that all of the terms, covenants and provisions contained in this Note, the Mortgage or the Other Security Documents which are to be kept and performed by the Maker are hereby made a part of this Note to the same extent and with the same force and effect as if they

- 2 -

were fully set forth herein. The Payee hereof may exercise this option to accelerate during any default by the Maker regardless of any prior forbearance. Maker hereby waives any requirement for notice of default or notice of intention to accelerate.

A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m. (New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid within five (5) days from the date which same are due, the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee.

Maker hereby recognizes that an additional fee in the amount of Three Hundred Seventy-Five Thousand and 00/100 Dollars ($375,000.00) ("**Deferred Loan Fee**") was due and payable upon receipt of the principal sum of this Note and Payee as an accommodation to Maker has allowed payment to be deferred until the earlier to occur of the prepayment of this Note or the Maturity Date hereof. Accordingly, in addition to any additional fees due, upon any such prepayment of this Note or due upon the Maturity Date, Maker shall pay the Deferred Loan Fee to Payee.

Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium in an amount equal to six (6) Monthly Payments, less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than six (6) full Monthly Payments hereunder, then, Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (a "Prepayment Notice"), setting forth the intended prepayment date ("Prepayment Date"), which Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Prepayment Date and not less than thirty (30) days prior to the Prepayment Date and on the Prepayment Date, Maker shall make prepayment as herein above provided.

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note sets forth the entire agreement and understanding of Payee and Maker. Maker hereby waives valuation, appraisement, presentment, demand for payment, notice of non-payment, notice of dishonor, protest or notice of protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, and the benefit of all applicable law affording any right or redemption or cure.

This Note shall be the joint, several and solidary obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns. If any payment under this Note is not made when due or if this Note is placed in the hands of an attorney for collection or enforcement of this Note is collected through any legal proceeding,

- 3 -



including, without limitation, suit, probate, insolvency, or bankruptcy proceedings, Maker agrees to pay all costs of collection when incurred, including reasonable attorneys' fees, which costs shall be added to the amount due under this Note and shall be receivable therewith.

All parties hereto severally waive presentment for payment, demand, notice of non payment, protest, and all pleas of division and discussion, and agree that the payment hereof may be extended from time to time, one or more times, without notice, the Maker hereby binding itself in solido, unconditionally and as original promissor for the payment hereof, in principal, interest, costs and attorney's fees.

The indebtedness herein evidenced by this Note is secured by the Mortgage and the Other Security Documents.

THIS NOTE, EXCEPT AS OTHERWISE PROVIDED IN HEREIN, THE MORTGAGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

NOTWITHSTANDING THE FOREGOING CHOICE OF LAW:

(i)    THE PROCEDURES GOVERNING THE ENFORCEMENT BY PAYEE OF ITS FORECLOSURE AND OTHER REMEDIES AGAINST MAKER UNDER THE MORTGAGE AND UNDER THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES (AS SUCH TERM IS DEFINED IN THE MORTGAGE) OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS OR LOUISIANA, AS APPLICABLE, INCLUDING BY WAY OF ILLUSTRATION, BUT NOT IN LIMITATION, ACTIONS FOR FORECLOSURE, FOR INJUNCTIVE RELIEF OR FOR THE APPOINTMENT OF A RECEIVER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS OR LOUISIANA, AS APPLICABLE;

(ii)    PAYEE SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF TEXAS OR LOUISIANA, AS APPLICABLE, TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS CREATED UNDER THE MORTGAGE AND THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS OR LOUISIANA, AS APPLICABLE; AND

(iii)    PROVISIONS OF FEDERAL LAW AND THE LAW OF THE STATE OF TEXAS OR LOUISIANA, AS APPLICABLE, SHALL APPLY IN DEFINING THE TERMS HAZARDOUS SUBSTANCES AND ENVIRONMENTAL LAWS (AS SUCH TERMS ARE DEFINED IN THE OTHER SECURITY DOCUMENTS) APPLICABLE TO THE PREMISES.

NOTHING CONTAINED HEREIN OR ANY OTHER PROVISIONS OF THE MORTGAGE OR OTHER SECURITY DOCUMENTS SHALL BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS OR

- 4 -

LOUISIANA, AS APPLICABLE, SHALL APPLY TO ANY PARTIES, RIGHTS AND OBLIGATIONS UNDER THIS NOTE, THE MORTGAGE OR THE OTHER SECURITY DOCUMENTS, WHICH, EXCEPT AS EXPRESSLY PROVIDED IN CLAUSES (i), (ii) AND (iii) ABOVE, ARE AND SHALL CONTINUE TO BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF NEW YORK, EXCEPT AS SET FORTH IN CLAUSES (i), (ii) AND (iii) ABOVE. IN ADDITION, THE FACT THAT PORTIONS OF THIS NOTE, THE MORTGAGE AND THE OTHER SECURITY DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE OF TEXAS OR LOUISIANA, AS APPLICABLE, IT IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES, CHOICE OF LAW AS SET FORTH OR REFERRED TO IN THIS NOTE, THE MORTGAGE OR IN THE OTHER SECURITY DOCUMENTS. THE PARTIES FURTHER AGREE THAT THE PAYEE MAY ENFORCE ITS RIGHTS UNDER THIS NOTE, THE MORTGAGE AND THE OTHER SECURITY DOCUMENTS INCLUDING, BUT NOT LIMITED TO, ITS RIGHTS TO SUE THE MAKER OR TO COLLECT ANY OUTSTANDING INDEBTEDNESS IN ACCORDANCE WITH APPLICABLE LAW.

Maker does hereby agree that upon the occurrence of an Event of Default (as such capitalized term is defined in the Mortgage), or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four (24%) percent per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt. This charge shall be added to the Debt, and shall be deemed secured by the Mortgage. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage and the Other Security Documents.

Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Mortgage, Other Security Documents and applicable law.

RE\50260\9075\341348v2

**TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

Any provision of this Note, the Mortgage or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

All notices to be given under this Note shall be given in the same manner as provided in the Mortgage.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Maker hereby irrevocably and unconditionally waives, and Payee, by its acceptance of this Note, irrevocably and unconditionally waives, any and all right to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Note, the Mortgage or the Other Security Documents.

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE MORTGAGE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED

RE\50260\9075\341348v2

OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

[signature page follows]

- 7 -

**IN WITNESS WHEREOF,** Maker has duly executed this Note the day and year first above written.

SW DALLAS, L.P.

By: SW Dallas GP, LL
     its general partner

By: _____
    Name: Thomas E. Morris
    Title:  Manager

NORTHGATE PRIME, L.P.

By: Lafayette Prime, Inc.
     its general partner

By: _____
    Name: Thomas E. Morris
    Title:  President

STATE OF TEXAS          )
                       )  ss.:
COUNTY OF DALLAS        )


On the __18__ day of July, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas E. Morris, manager of SW Dallas GP, LLC, general partner of SW Dallas, L.P., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as the act of said entities for the purposes and consideration therein expressed.



Notary Public

POLLY THORNE FLORY
Notary Public
State of Texas
Comm. Expires 08-05-2009


STATE OF TEXAS          )
                       )  ss.:
COUNTY OF DALLAS        )


On the __18__ day of July, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas E. Morris, president of Lafayette Prime, Inc., general partner of Northgate Prime, L.P., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as the act of said entities for the purposes and consideration therein expressed.



Notary Public

POLLY THORNE FLORY
Notary Public
State of Texas
Comm. Expires 08-05-2009

Exhibit B

# GUARANTY

Grand Prairie, Texas                                                  as of July 19, 2007

In consideration of advances, loans, extensions of credit, renewals, acquisition of notes, mortgages, and other instruments for payment of money due or to become due, heretofore made to or for the account of **SW DALLAS, L.P.** and **NORTHGATE PRIME, L.P.**, each having an address at 2911 E. Division Street, Suite 411, Arlington, Texas 76011 (hereinafter collectively, referred to as "Borrower") by **MADISON REALTY CAPITAL, L.P.**, its successor and/or assigns, as their interests may appear, having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 (hereinafter referred to as "Lender"), the undersigned (each, any and all of whom being hereinafter referred to individually and, if more than one, collectively, as "Guarantor"), jointly and severally (if more than one) hereby absolutely and unconditionally guarantees to Lender the prompt payment of claims of every nature and description of Lender against Borrower and any and every obligation and liability of Borrower to Lender of whatsoever nature and howsoever evidenced, whether now existing or hereafter incurred, whether originally contracted with Lender, or subsequently acquired by Lender, in whole or part, whether direct or indirect, absolute or contingent, secured or not secured, matured or not matured, including, but not limited to those payments, obligations and liabilities contained in the Note, Mortgage and Other Security Documents (each as defined in that certain Note executed simultaneously herewith), all of which are hereinafter referred to as "Obligations").

1.      Guarantor hereby covenants and agrees to and with Lender, its successors and/or assigns, that if Borrower shall at any time default in the payment or performance of the Obligations, Guarantor, in each and every instance, shall and will forthwith pay such Obligations to the Lender, its successors and assigns, and shall and will forthwith faithfully perform and fulfill all of the Obligations, and will forthwith pay to Lender any and all damages that may arise as a result of any default by Borrower under any of the Obligations (including, without limitation, all reasonable attorneys' fees, disbursements and court costs suffered or paid by Lender in any action or proceeding between Lender and Borrower, between Lender and Guarantor or between Lender and any third party or otherwise) caused by any such default and/or by the enforcement of this Guaranty.

2.      The Guarantor agrees that, with or without notice or demand, it shall reimburse Lender for all costs and expenses (including, without limitation, reasonable attorneys fees, disbursements and court costs) incurred by Lender in connection with any action or proceeding brought by Lender to enforce the obligations of the Guarantor under this Guaranty.

3.      The Guarantor agrees that all moneys available to Lender for application in payment or reduction of the Obligations may be applied by Lender in such manner and in such amounts and at such time or times and in such order, priority and proportions as Lender may elect.

4.      The Guarantor hereby consents that, from time to time, before or after any default by Borrower, with or without further notice to or assent from the Guarantor that, any security at any time held by or available to Lender for any obligation of Borrower, or any

RE\50260\9075\341348v2

security at any time held by or available to Lender for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Obligations, may be exchanged, surrendered or released and any obligation of Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and Lender may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to Borrower, and generally deal with Borrower or any such security or other person or party as Lender may see fit; and the Guarantor shall remain bound under this Guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

5.    The Guarantor hereby waives (a) notice of acceptance of this Guaranty and of the making of any loan or any advance to Borrower; (b) presentment and demand for payment of the Obligations or any portion thereof; (c) protest and notice of dishonor or default to the Guarantor or to any other person or party with respect to the Obligations or any portion thereof, (d) all other notices to which the Guarantor might otherwise be entitled; and (e) any demand for payment under this Guaranty.

6.    This Guaranty is an absolute and unconditional guaranty of payment and performance and not of collection. The Guarantor waives any right to require that any action be brought against Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person or party.

7.    Guarantor's obligations under this Guaranty shall remain in full force and effect without regard to, and shall not be modified, impaired or affected by, or diminished by reason of, any event or circumstance that might otherwise constitute a legal or equitable discharge of Guarantor, including, without limitation: (a) any amendment, extension or modification of, or addition or supplement to, any of the terms, conditions or provisions of any indebtedness of Debtor to Lender, or (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect to any of the terms, conditions or provisions of any Obligations of Borrower to Lender; or (c) any consent, indulgence, exercise or non-exercise by Lender of any right, power or remedy under or in respect of any Obligations, or any waiver of any such right, power or remedy or any dealings or transactions or matter or thing of any kind or nature between Borrower and Lender; or (d) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation, or the like of Borrower, or the discharge or release of Borrower in any such bankruptcy proceeding; or (e) any limitations of Borrower's liability that may now or hereafter be imposed by any statute, regulation or rule of law, or any illegality, irregularity, invalidity or unenforceability, in whole or in part, of any of the Obligations; or (f) any other circumstance, whether or not the Guarantor shall have had notice or knowledge thereof, or (g) any modification or waiver of or change in any of the terms, covenants, conditions or provisions of any of the Obligations, notwithstanding that such modifications or amendments increase the liability of Guarantor hereunder.

2

8.      Each reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the Guarantor, all of whom shall be bound by the provisions of this Guaranty, provided, however, that the Guarantor shall in no event or under any circumstance have the right without obtaining the prior written consent of Lender, in Lender's sole and absolute discretion, to assign or transfer the obligations and liabilities of the Guarantor under this Guaranty, in whole or in part, to any other person, party or entity.

9.      No delay on the part of Lender in exercising any right or remedy under this Guaranty or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy.  No notice to or demand on the Guarantor shall be deemed to be a waiver of the obligation of the Guarantor or of the right of Lender to take further action without notice or demand as provided in this Guaranty.

10.     This Guaranty may be modified, amended, changed or terminated only by an agreement in writing signed by Lender and the Guarantor. No waiver of any term, covenant or provision of this Guaranty shall be effective unless given in writing by Lender, and if so given by Lender, shall be effective only in the specific instance in which given.

11.     The Guarantor acknowledges that this Guaranty and the obligations of the Guarantor under this Guaranty are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever that might otherwise constitute a defense to this Guaranty and the obligations of the Guarantor under this Guaranty or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty or otherwise with respect to the Obligations. This Guaranty sets forth the entire agreement and understanding of Lender and the Guarantor, and the Guarantor absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Guaranty or the obligations of the Guarantor under this Guaranty or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty or otherwise with respect to the Obligations, or in any action or proceeding brought by Lender to collect the Obligations, or any portion thereof, or to enforce the obligations of the Guarantor under this Guaranty. The Guarantor acknowledges that no oral or other agreements, understandings, representations or warranties exist with respect to this Guaranty or with respect to the obligations of the Guarantor under this Guaranty, except those specifically set forth in this Guaranty.

12.     The Guarantor hereby irrevocably and unconditionally waives, and Lender by its acceptance of this Guaranty irrevocably and unconditionally waives, any and all rights to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Guaranty.

13.     Notwithstanding any payments made by the Guarantor pursuant to the provisions of this Guaranty, the Guarantor shall have no right of subrogation in and to any of the Obligations or the payment thereof until the Obligations have been paid in full to Lender or performed and all preference periods have lapsed. The Guarantor agrees that if any payment

3

made by the Borrower or the Guarantor to Lender or any portion of the Obligations is rescinded, recovered from or repaid by Lender, in whole or in part in any bankruptcy, insolvency or similar proceeding instituted by or against the Borrower or Guarantor, this Guaranty shall continue to be fully applicable to such Obligations to the same extent as though the payment so recovered or repaid had never originally been made on such Obligations regardless of, and, without giving effect to, any discharge or release of the Guarantor's obligations hereunder granted by Lender after the date hereof.

14.    Any notice, request or demand given or made under this Guaranty shall be in writing and shall be hand delivered or sent by Federal Express or other reputable overnight courier service or by postage prepaid registered or certified mail, return receipt requested, to the respective addresses set forth at the beginning or end of this Guaranty, as the case may be, and shall be deemed given (i) if sent by hand, when delivered; (ii) if sent by Federal Express or other reputable courier service, one (1) day following deposit with such courier service; or (iii) if sent by registered or certified mail, three (3) business days after being postmarked. Refusal to accept delivery of a notice shall be deemed delivery thereof. Each party to this Guaranty may designate a change of address by notice given to the other party fifteen (15) days prior to the date such change of address is to become effective.  Notices required or permitted to be given hereunder may be given by a party's attorneys.

15.    THIS GUARANTY IS, AND SHALL BE DEEMED TO BE, A CONTRACT ENTERED INTO UNDER AND PURSUANT TO THE LAWS OF THE STATE OF NEW YORK AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW OF SUCH STATE.  NO DEFENSE GIVEN OR ALLOWED BY THE LAWS OF ANY OTHER STATE OR COUNTRY SHALL BE INTERPOSED IN ANY ACTION OR PROCEEDING HEREON UNLESS SUCH DEFENSE IS ALSO GIVEN OR ALLOWED BY THE LAWS OF THE STATE OF NEW YORK.

16.    FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS GUARANTY, OR TO RESOLVE ANY DISPUTE ARISING UNDER THIS GUARANTY OR THE RELATIONSHIP BETWEEN THE PARTIES, GUARANTOR IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS.  GUARANTOR IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  NOTHING IN THIS GUARANTY SHALL BE DEEMED TO PRECLUDE LENDER FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS GUARANTY OR THE DEBT (AS SUCH TERM IS DEFINED IN THE NOTE) IN ANY OTHER JURISDICTION WHERE LENDER COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING.  GUARANTOR FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT,

4

ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO GUARANTOR AT THE ADDRESS SET FORTH BELOW, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

17.      Each of the Guarantors hereby represent and warrant:

(a)      That this Guaranty constitutes the legal, valid and binding obligations of the Guarantor, enforceable against the Guarantor in accordance with its terms, subject to any applicable bankruptcy, insolvency or other similar law now or hereinafter in effect;

(b)      Neither this Guaranty nor any of the documents executed in connection with the Loan to which the Guarantor is a party will violate any provision of law, rule, or regulation or any order of any court or other governmental agency to which the Guarantor is subject, the organizational documents of Guarantor, if any, the provisions of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's properties or assets are bound, or be in conflict with, result in a breach of, or constitute a default under (with or without notice or lapse of time), any such agreement or instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any properties or assets of the Guarantor.

(c)      No action or approval by or of and no filing or registration with any governmental or public body or authority, any subdivision thereof, or the consent of any other person or entity, or any other legal formality is required in connection with the entering into, performance or enforcement of this Guaranty, except those as have been obtained or taken and with respect to which a copy or other satisfactory evidence thereof has been furnished to Lender.

(d)      The financial statements and tax returns of the Guarantor delivered to Lender are true, complete and accurate.

(e)      The Guarantor shall not terminate or dissolve or suspend Guarantor's usual business activities, or convey, sell, lease, transfer or otherwise dispose all or a substantial part of the Guarantor's assets during the term of this Guaranty.

18.      No exculpatory provisions, if any, contained in any of the Obligations shall in any event or under any circumstance be deemed or construed to modify, qualify or affect in any manner whatsoever the personal recourse obligations and liabilities of the Guarantor under this Guaranty.

19.      In the event that there is more than one guarantor, this Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterpart shall be an original and all of which together shall constitute a single agreement of



guaranty. The failure of any party listed below to execute this Guaranty, or any counterpart hereof, shall not release any other party from his obligations hereunder.

20.    Guarantor, if more than one person or entity, acknowledges that the obligations created herein are solidary for each person or entity.

[signature page follows]

6

RE\5026\09075\341348v2

**IN WHEREOF,** the Guarantor has duly executed this Guaranty the day and year first above set forth.

**WITNESSES:**

_signature_

Printed Name: Kim Pinkerton

_signature_

Printed Name: Eva Mae Green

_signature_

Thomas E. Morris
1001 Flower Mound Road
Flower Mound, Texas 75028

SS# 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

# ACKNOWLEDGMENT

STATE OF TEXAS              )
                           )    ss.:
COUNTY OF DALLAS           )

     On the 18 day of July, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas E. Morris, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

POLLY THORNE FLORY
Notary Public
State of Texas
Comm. Expires 08-05-2009

RE\50260\9075\341348v2