```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
MADISON REALTY CAPITAL, L.P.,                                  :
                                                               :   08-CV-06273 (LAP) (DF)
                    Plaintiff,                                 :
                                                               :   REPORT AND
         -against-                                             :   RECOMMENDATION
                                                               :
THOMAS E. MORRIS,                                              :
                                                               :
                    Defendant.                                 :
---------------------------------------------------------------X
```

**TO THE HONORABLE LORETTA A. PRESKA:**

Plaintiff Madison Realty Capital, L.P. ("Madison Realty") filed this action on July 11, 2008, alleging breach of contract by defendant Thomas E. Morris ("Morris"). (Complaint, dated Jul. 10, 2008 ("Compl.") (Dkt. 1).) On October 2, 2008, after Morris failed to answer or move with respect to the Complaint, the Court (Preska, J.) granted Madison Realty's request for an entry of default judgment against Morris (Dkts. 5; 6), and, thereafter, referred this matter to me to conduct an inquest and to report and recommend concerning damages (Dkt. 7). For the reasons that follow, I recommend that Madison Realty be awarded damages, fees, and costs as calculated below.

## BACKGROUND

### A.   Factual Background

As alleged in the Complaint, and as supported by the documentation submitted by Madison Realty on this inquest, the relevant facts are as follows: Madison Realty is a Delaware limited partnership headquartered in New York, New York. (Compl., at ¶ 2.) Morris is an individual residing in Texas and is the "president of the general partner" of SW Dallas, L.P. and Northgate Prime, L.P. (*Id.*, at ¶ 3.)

1.      **The Promissory Note**

On July 19, 2007, SW Dallas, L.P. and Northgate Prime, L.P (collectively, the "Borrowers") executed and delivered to Madison Realty a promissory note (the "Note") to secure repayment of an $18,750,000 loan, along with interest on the principal and other charges and fees. (*Id.* Ex. A (Note, dated Jul. 19, 2007);[1] Madison Realty's Proposed Findings of Fact and Conclusions of Law, dated Dec. 4, 2008 ("Proposed Findings") (Dkt. 10), at ¶ 2.) According to the Note, on the "Maturity Date," the Borrowers were required to pay back the entire outstanding principal balance, together with any accrued and unpaid interest and other applicable fees and charges. (Compl. Ex. A, at 1.) The Note defines the "Maturity Date" as "the earlier of (i) July 18, 2008 or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms [of the Note]." (*Id.*, at 2.)

The Borrowers were also required to make various other payments pursuant to the Note. First, the Borrowers were obligated to make monthly interest payments at the "Interest Rate," which is defined in the Note as 11.5%[2] of the outstanding principal balance, per annum. (Compl. Ex. A., at 1.) The first monthly interest payment was due on September 1, 2007, and, thereafter, a new payment became due on the first of each month, until the Maturity Date. (*Id.*, at 1.) The monthly interest payments were to be paid "in arrears" (*id.*), apparently meaning that the interest

---

[1] The loan was secured by two mortgages encumbering real estate in Texas and Louisiana (respectively, the "Texas Property" and the "Louisiana Property") (Compl., at ¶ 8; Affidavit of John J. Sorel in Support of Madison Realty's Proposed Findings, dated Dec. 4, 2008 ("Sorel Aff.") Ex. B (Mortgage and Security Agreement, dated Jul. 19, 2007; Deed of Trust and Security Agreement, dated Jul. 18, 2007)), and the terms and conditions of the mortgage documents are incorporated by reference into the Note (*see* Compl. Ex. A, at 2-3).

[2] Although not applicable here, the Note also provides for an alternate interest rate of 3.25% plus the Prime Rate. (Compl. Ex. A, at 1.)

that accrued during a particular month would be paid on the first day of the following month (*see id*).

Second, if Madison Realty did not receive a payment within five days of the date that it became due, the Borrowers would be required to pay a late fee equal to 10% of the unpaid installment. (*Id.*, at 3.)

Third, the Borrowers were required to pay a "deferred loan fee," in the amount of $375,000, upon initial receipt of the principal. (*Id.*) According to the Note, however, Madison Realty allowed the Borrowers to defer this payment until the Maturity Date, or the date of prepayment of the Note, whichever came first. (*Id.*)

In an "Event of Default" by the Borrowers, the Note provides that the entire debt would become immediately due and payable at Madison Realty's option. (*Id.*, at 2-3.) According to the Note:

> It is hereby expressly agreed that the entire Debt shall become immediately due and payable at the option of [Madison Realty] on the happening of any default or event by which under the terms of this Note, the Mortgage or the Other Security Documents, the Debt may or shall become due and payable, and that all of the terms, covenants and provisions contained in this Note, the Mortgage or the Other Security Documents which are to be kept and performed by [the Borrowers] are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein. [Madison Realty] may exercise this option to accelerate during any default by [the Borrowers] regardless of any prior forbearance. [the Borrowers] hereby waive[] any requirement for notice or default or notice of intention to accelerate.

3

(*Id*.) "Event of Default" is defined in the mortgage on the Louisiana Property.[3] (*See* Sorel Aff. Ex. B, at 14-15.) According to that document, an Event of Default would occur, *inter alia*: (1) if the Borrowers were to fail to pay any portion of the debt within five days from the date that it became due and payable; (2) if a receiver, liquidator, or trustee of the Borrowers were appointed, if the Borrowers were adjudicated bankrupt or insolvent, or if the Borrowers were to file for bankruptcy; or (3) if the Borrowers were to default on any term or condition of the Note, the mortgages, or any other security document. (*Id*.)

The Note also provides that, if an Event of Default were to occur, or if the Borrowers were to fail to pay the debt in full by the Maturity Date, the Borrowers would be obligated to pay the lower of: interest at 24% per year on the outstanding principal balance, or the maximum rate of interest allowed by law. (Compl. Ex. A, at 5.)

    **2.**    **The Guaranty**

On the same day that the Borrowers delivered the Note, Morris executed a Guaranty wherein he "absolutely and unconditionally guarantee[d]" the prompt payment of any and all obligations and liabilities of the Borrowers arising from the Note. (Compl. Ex. B (Guaranty, dated Jul. 19, 2007, at 1); *see also* Compl., at ¶ 15.) Morris also agreed to pay "any and all damages" incurred by Madison Realty as a result of a default by the Borrowers or its enforcing the Guaranty, which included, but was not limited to, "reasonable attorneys' fees, disbursements, and court costs." (Compl. Ex. B, at 1.)

---

[3] The same definition is found in the mortgage documents for the Texas Property. (*See* Sorel Aff. Ex. B (Deed of Trust and Security Agreement, dated Jul. 18, 2007, at 13-14).)

### 3. The Borrowers' Default

From September, 2007, through January, 2008, the Borrowers paid the monthly interest payments out of an interest reserve fund held by Madison Realty. (Sorel Aff., at ¶ 16.) The reserve fund was eventually depleted, however, and the remainder of the fund was applied to the interest payment due on February 1, 2008. (*See id*.) Yet this amount did not cover the entire February interest payment, and the Borrowers paid the remaining balance due on that payment, a sum of $26,354.15, on February 13, 2008. (*Id*.)

Thereafter, the Borrowers failed to make the monthly interest payments that became due on March 1 and April 1, 2008. (*Id*.) Consequently, by letter dated April 1, 2008, Madison Realty notified the Borrowers and Morris that an Event of Default had occurred. (Sorel Aff. Ex. D (Letter to the Borrowers and Morris, from Madison Realty, dated Apr. 1, 2008).) In the letter, Madison Realty also warned the Borrowers and Morris that if Madison Realty did not receive payment in full within 10 days, it would declare the entire debt immediately due and payable. (*Id*.) The Borrowers responded by tendering a payment on April 10, 2008, in the amount of $185,000, which Madison Realty applied to the outstanding March interest payment. (Sorel Aff., at ¶ 18.) This amount, however, was $6,067.71 less than the actual amount due, which included both accrued interest and a late fee. (*Id*.)

Despite Madison Realty's demand for payment, the Borrowers failed to tender the remainder of the March interest payment, or any portion of the April interest payment. (*Id*., at ¶ 19.) Accordingly, by letter dated May 12, 2008, Madison Realty declared the entire outstanding principal balance due and payable, together with all accrued and unpaid interest and other applicable charges. (Sorel Aff. Ex. E (Letter to the Borrowers and Morris, from Madison

Realty, dated May 12, 2008).)  Nonetheless, the Borrowers failed to comply with their obligations, and the final payment they made on the Note appears to have been the April 10, 2008, payment of $185,000.[4]  (*See id*., at ¶¶ 16-19.)

### B.   **Procedural History**

Madison Realty filed this action on July 11, 2008, seeking to recover from Morris on the Guaranty.  (*See generally* Compl.)  On August 1, 2008, the Summons and Complaint in this action were served upon Morris by leaving them with a person of suitable age at Morris's place of business.  (Sorel Aff. Ex. G (Affidavit of Service, dated Aug. 4, 2008); *see also* Fed. R. Civ. P. 4(e)(2)(B).)[5]  On September 12, 2008, after Morris failed to answer or otherwise respond to the Complaint, Madison Realty filed an application for a certificate of default against Morris.  (Dkt. 4.)  On October 2, 2008, this Court granted Madison Realty's request and directed the Clerk of Court to enter a default judgment against Morris (Dkt. 5), which was entered on October 10, 2008 (Dkt. 6).  On October 16, 2008, The Honorable Loretta A. Preska, United States District Judge, referred this matter to me for an inquest and to report and recommend concerning damages.  (Dkt. 7.)

In a Scheduling Order dated October 27, 2008, this Court directed Madison Realty to submit Proposed Findings of Fact and Conclusions of Law on the issue of damages no later than December 5, 2008.  (Dkt. 9.)  The Court also directed Morris to respond by January 5, 2009.

---

[4] SW Dallas, L.P. filed for bankruptcy on June 2, 2008 (Sorel Aff., at ¶ 20), which, pursuant to the loan documents, constituted another Event of Default.  (*See id*. Ex. B., at 14; Compl. Ex. A., at 2-3.)

[5] The Summons and Complaint were also mailed to Morris on August 1, 2008.  (Sorel Aff. Ex. G.)

(*Id*.)  On December 5, 2008, Madison Realty submitted its Proposed Findings, along with the Sorel Affidavit and supporting exhibits.  (Dkt. 10.)  On April 30, 2009, upon the Court's request, Madison Reality submitted supplemental documentation concerning the issue of attorneys' fees.  These documents appear to have superseded portions of Exhibit J to the Sorel Affidavit.  (*See* Letter to Court, from Madison Realty, dated Apr. 30, 2009, and attached documents.)  The Court ordered Morris to submit a response to Madison Realty's April 30, 2009, submission by May 15, 2009.  (Dkt. 11.)

On June 23, 2009, this Court issued another Order, in which it again directed Madison Realty to supplement its evidence concerning attorneys' fees.  (Dkt. 12.)  On the understanding, however, that Madison Realty was growing concerned that the passage of time could impact its practical ability to recover from Morris, the Court noted in that Order that if Madison Realty preferred that the Court issue a report and recommendation as to damages alone, Madison Realty should so notify the Court and it would proceed in that fashion.  (*Id*., at 1 n.1.)  The following day, Madison Realty submitted a letter to the Court stating that it would prefer to proceed at this time as to damages alone, so that it would not have to wait for that recovery, and it requested permission to return to the Court and file a separate application for attorneys' fees.  (Letter to Court, from Nolan E. Shanahan, Esq., dated Jun. 24, 2009; *see also* Dkt. 12, at 1 n.1.)

To date, Morris has not filed a response to any of Madison Realty's submissions, nor has he contacted the Court to request a hearing.

## DISCUSSION

In its Proposed Findings and supporting papers, Madison Realty asks the Court to award it the principal unpaid balance on the Note; interest on the unpaid balance at the rate of 11.5%

for the period from February 1, 2008, through May 11, 2008; and interest at the rate of 24% for the period from May 12, 2008, through the date that the Court enters judgment. Madison Realty also seeks to recover a late fee of $17,369.78 and the deferred loan fee of $375,000. In addition, Madison Realty urges the Court to award it damages for costs incurred in preserving and protecting the value of the properties securing the loan. In all, Madison Realty maintains that, as of December 5, 2008, it was entitled to recover $22,547,612.83.[6] Without a response from Morris, this Court must assess whether Madison Realty has sufficiently demonstrated the amounts in question.

Although "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," it does not reach the issue of damages. *Bambu Sales*, *Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In conducting an inquest, the Court accepts as true all of the factual allegations of the Complaint, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (on inquest, "the court may rely on detailed affidavits or documentary evidence" to "ensure[] that there is a basis for the damages specified"); *see also Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (noting that the Court "should take the necessary steps

---

[6] This figure does not include Madison Realty's additional request for an award of attorneys' fees because, as noted above, Madison Realty has requested that the Court proceed, at this time, as to damages alone.

to establish damages with reasonable certainty"); *Au Bon Pain Corp.*, 653 F.2d at 65 (plaintiff is "entitled to all reasonable inferences from the evidence offered"). Although the Court may hold a hearing to assess those damages, a hearing is not required where a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

Under New York law, the general measure of damages on a breach-of-contract claim is "'the amount necessary to put the plaintiff in the same economic position he would have been put in had the defendant fulfilled his contract.'" *Chalman Lal Setia Exports Ltd. v. Sawhney*, No. 00 Civ. 2838 (MBM) (KNF), 2002 U.S. Dist. LEXIS 14228, at *10 (S.D.N.Y. Jul. 31, 2002) (report & recommendation) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995)), *adopted by* 2003 U.S. Dist. LEXIS 20954 (S.D.N.Y. May 28, 2003).

I. **MADISON REALTY IS ENTITLED TO THE PRINCIPAL SUM OF $18,750,000, THE DEFERRED LOAN FEE OF $375,000, ACCRUED AND UNPAID INTEREST, AND A LATE CHARGE.**

With respect to the amount due from Morris under the Note, Madison Realty directs the Court to (1) the Note, which provides that Borrowers, on the Maturity Date, were required to pay Madison Realty $18,750,000, together with the deferred loan fee and any accrued and unpaid interest (*see* Compl. Ex. A, at 1; 3); and (2) the Guaranty, which obligates Morris to, *inter alia*, pay all unpaid amounts due under the Note (*see* Guaranty, at 1). Madison Realty also submits a sworn affidavit attesting to the fact that the Borrowers never paid back any of the principal, that they did not pay back the deferred loan fee, and that the final interest payment they made was

9

tendered on April 10, 2008, in the amount of $185,000, which was allocated to, but did not entirely cover, the March interest payment.  (*See* Sorel Aff., at ¶¶ 16-19; 32.)

In this case, the loan matured on May 12, 2008, when Madison Realty declared the entire debt immediately due and payable.  (Sorel Aff., at ¶ 19; *see also* Compl. Ex. A, at 1; 2.)  Madison Realty was authorized to accelerate the Borrowers' payment obligations in this way because an Event of Default had occurred, *i.e.* the March interest payment was not delivered within five days of its due date.  (*See* Compl. Ex. A., at 2-3; Sorel Aff. Ex. B., at 14.)  The Borrowers were thus obligated to pay Madison Realty the entire principal sum, the deferred loan fee, accrued and unpaid interest, and any applicable late fees.  (Compl. Ex. A., at 1.)  Given that the Borrowers failed to make any payments on or after the Maturity Date, and that none of the payments the Borrowers had made up to that point were allocated to the principal or the deferred loan fee, Madison Realty is entitled to recover from Morris the principal sum of $18,750,000, plus the deferred loan fee of $375,000.

With regard to accrued and unpaid interest, the Sorel Affidavit reflects that the Borrowers paid in full the interest payment that was due on February 1, 2008 (although a portion of it was actually paid on February 13, 2008), but then failed to make the March and April payments. (Sorel Aff., at ¶ 16.)  As the Note provides that interest shall be "paid monthly in arrears," the March payment would have covered the interest that accrued from February 1 through February 29, 2008.  (*See* Compl. Ex. A., at 1; *see also* Sorel Aff., at ¶ 28.)  Madison Realty is thus entitled to recover interest on the principal sum of $18,750,000, at the applicable rate(s), from February 1, 2008, through the date of final judgment, less any sums paid and credited toward that accrued interest.

The Note provides that, absent an Event of Default, interest is to be calculated at a rate of 11.5% per year, based on a 360-day year. (Compl. Ex. A., at 1; 2.) On a principal balance of $18,750,000, Madison Realty correctly calculates the per diem interest rate as $5,989.58, before the Event of Default.[7] (Proposed Findings, at ¶ 28.) Thus, Madison Realty is entitled to be paid interest in the amount of $5,989.58 per day, for the time period from February 1, 2008, through May 11, 2008, the date it declared the loan in default. As there are 101 days in this period, the amount due for this period is $604,947.58. The Court notes, however, that the Borrowers did deliver a payment in the amount of $185,000 on April 10, 2008, which Madison Realty applied to the Borrowers' March interest payment obligation. (Sorel Aff., at ¶ 18.) The amount for this time period must therefore be reduced by $185,000, and the total interest to which Madison Realty is entitled for the period from February 1 through May 11, 2008, is $419,947.58.

After Madison Realty served the May 12, 2008, letter, the Borrowers were obligated to pay further interest at the default interest rate, which is calculated at 24% of the principal sum, per annum.[8] (*See* Compl. Ex. A, at 5.) The per diem interest rate for this period is $12,500,[9] and Madison Realty is therefore entitled to $12,500 per day for the period from May 12, 2008, through December 5, 2008, the date Madison Realty submitted its Proposed Findings. As there

---

[7] This figure is reached by multiplying $18,750,000 by .115, and then dividing that number by 360.

[8] New York's usury laws do not apply to this transaction because the amount loaned exceeded $2.5 million. *See In re Venture Mortgage Fund, L.P.,* 282 F.3d 185, 189 (noting that "no New York usury law prohibits, voids, or regulates transactions over $2.5 million, a financial plane above which all players apparently are deemed to be able to fend for themselves") (citing N.Y. Gen. Oblig. Law § 5-501(6)(b)).

[9] This figure is reached by multiplying $18,750,000 by .24, and then dividing that number by 360.

are 208 days in this period, Madison Realty correctly calculates that it is entitled to $2,600,000 for interest during this time period. (*See* Proposed Findings, at ¶ 26.)

In addition, so as to bring Madison Realty's interest calculations up to date, I recommend that, at the time judgment is entered, the Clerk of the Court be directed to multiply $12,500 by the number of days in the time period from December 6, 2008, through the date final judgment is entered, and to award this additional sum to Madison Realty. This additional interest amount should be awarded, together with the $419,947.58 for the period from February 1, 2008, through May 11, 2008, and the $2,600,000 for the period from May 12, 2008, through December 5, 2008.

Finally, the Note requires the Borrowers to pay a 10% late fee on any portion of a payment that is not paid within five days of the date that it becomes due. (Compl. Ex. A, at 3.) In this regard, Madison Realty seeks $17,369.78, which, according to Madison Realty, represents 10% of the March interest payment. (Proposed Findings, at ¶ 27.) As Madison Realty has adequately demonstrated that the March interest payment was not tendered within the time frame contemplated by the Note (*see* Sorel Aff., at ¶ 16; 18), Morris should be required to pay an additional 10% of the amount that became due on March 1, 2008. Given that the March 1 payment would have covered the interest that accrued throughout February, 2008, the Court agrees with Madison Realty that it should be awarded $17,369.78[10] for the Borrowers' failure to deliver the March payment in a timely fashion. (Proposed Findings, at ¶ 27.)

In sum, pursuant to the terms of the Note, Madison Realty should be awarded the following damages:

---

[10] The figure constitutes 10% of $173,697.82, which represents the interest that accrued during February of 2008, at the rate of $5989.58 per day, for a 29-day period.

   1.  the principal sum of $18,750,000;

   2.  the deferred loan fee in the amount of $375,000;

   3.  unpaid interest accrued from February 1, 2008, through May 11, 2008, in the amount of $419,947.58;

   4.  unpaid interest accrued from May 12, 2008, through December 5, 2008, in the amount of $2,600,000;

   5.  additional interest at a per diem rate of $12,500 from December 6, 2008 through the date judgment is entered; and

   6.  a late fee of $17,369.78;

for a total of $22,162,317.36, plus interest from December 6, 2008 to the date of judgment.

  I therefore recommend that, pursuant to the terms of the Note, Madison Realty be awarded, as against Morris, principal, interest, and fees on the loan, in the total amount of $22,162,317.36, together with an additional sum representing interest accrued at the rate of $12,500 per day, for the period from December 6, 2008, through the Court's entry of judgment.

## II. MADISON REALTY IS ENTITLED TO FURTHER DAMAGES IN THE AMOUNT OF $385,295.47, FOR COSTS INCURRED AS A RESULT OF THE DEFAULT.

  Madison Realty also asserts that it is entitled to reimbursement for various expenditures it made to preserve the properties securing the underlying loan. (*See* Proposed Findings, at ¶ 30-33.) In this regard, Madison Realty submits two redemption certificates, both dated August 29, 2008, issued by the Parish and the City of Lafayette, Louisiana, showing that Madison Realty paid $58,292.30, including $48,192.58 to the Parish and $10,099.72 to the City, to redeem the Louisiana Property from a tax sale. (Sorel Aff. Ex. K; *see also* Sorel Aff., at ¶ 33.) Madison Realty also submits an invoice from an insurance provider as proof that it paid $72,726.67 for an insurance policy to protect the value of the Louisiana Property. (*Id*. Ex. L;

¶ 34.)  Further, Madison Realty has shown that it spent an additional $276.50 for title work performed on the Texas Property.  (*Id*., at ¶ 34; Ex. M.)  Finally, an Order of the United States Bankruptcy Court for the Northern District of Texas reflects that Madison Realty advanced $254,000 to the bankruptcy estate of SW Dallas, L.P., in order to preserve the Texas Property.  (*Id*. Ex. N; ¶ 35.)

Madison Realty is entitled to reimbursement from Morris for these expenditures, as Morris assumed the duty to pay Madison Realty "any and all damages that may arise as a result of any default by Borrower[s]."  (Compl. Ex. B, at 1.)  The expenses listed above are properly characterized as damages arising from the default, and the Court thus recommends that Madison Realty be granted an additional damages award of $385,295.47.

### III.    AT THIS TIME, MADISON REALTY HAS NOT ESTABLISHED THAT IT IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES.

In its Complaint and Proposed Findings, Madison Realty also seeks to recover attorneys' fees, based on Morris's having assumed in the Guaranty the obligation to pay the reasonable attorneys' fees incurred by Madison Realty as a result of the Borrowers' default and in connection with an action to enforce the Guaranty.  (*See id*.)

In determining appropriate attorneys' fees, the so-called "lodestar" method – or, in language recently adopted by the Second Circuit, the method of multiplying an attorney's reasonable hours by a reasonable hourly rate for the services performed, so as to determine a "presumptively reasonable fee," *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), *amending and superseding* 493 F.3d 110 (2d Cir. 2007) – is "the most useful starting point" in determining an appropriate fee award, *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  When the Court employs this method to determine an

appropriate attorneys' fee award, the party seeking fees has the burden of demonstrating that its requested fees are reasonable. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984). To that end, a fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. The fee applicant bears the burden of demonstrating that the requested rates are in line with the prevailing market rates for comparable work. *See Edmonds v. Seavey*, 08 Civ. 5646 (HB) (JCF), 2009 U.S. Dist. LEXIS 47560, at *6-7 (S.D.N.Y. Jun. 5, 2009) (citing *Blum*, 465 U.S. at 895 n.11). Yet the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought. *Miele v. N.Y. State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 409 (2d Cir. 1987). When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

By Order dated June 23, 2009, having determined that Madison Realty had not submitted sufficient evidence to permit the Court to assess the reasonableness of its request for attorneys' fees, this Court directed Madison Realty to supplement its submissions in this regard. (Dkt. 12.) As noted above, however, on June 24, 2009, counsel for Madison Realty, so as not to delay this matter, requested that the Court proceed with a report and recommendation addressing only damages. (Letter to Court, from Nolan E. Shanahan, Esq., dated Jun. 24, 2009.) Counsel for

15

Madison Realty also requested it be granted permission to return to the Court and file a separate application for attorneys' fees at a later date. (*Id*.)

As Madison Realty has not submitted a sufficient basis to assess the reasonableness of its proposed fee award, the Court recommends that no attorneys' fees be included in the judgment at this time. In the circumstances presented, however, the Court also recommends that Madison Realty be afforded a reasonable opportunity to proceed separately with its fee application, should it still wish to pursue the recovery of attorneys' fees in this action. Should it wish to proceed, Madison Realty should supplement its prior fee submissions with the documentation that the Court described in its June 23, 2009 Order.[11]

## **CONCLUSION**

For all the foregoing reasons, I recommend that, on the default judgment, Madison Realty be awarded:

Damages for breach of contract, as follows:

    (a)    Principal: $18,750,000.

    (b)    Deferred Loan Fee: $375,000.

    (c)    Interest:

---

[11] Specifically, the Court directed Madison Realty to supplement its submissions with (1) the full names, respective levels of experience, and hourly billing rates of all attorneys for whose services Madison Realty sought an award of attorneys' fees; and (2) to the extent Madison Realty sought to recover attorneys' fees for attorneys who were retained to perform services in other jurisdictions, evidence concerning the prevailing market rates for similar services performed by attorneys of reasonably comparable skill, experience, and reputation in the particular communities where those services were performed. (Dkt. 12, at 1-2.) The Court also directed Madison Realty to review its computation of attorneys' fees incurred by the law form of Cole, Schotz, Meisel, Forman, & Leonard, P.A., and to submit either an explanation or a revision of its computation. (Dkt. 12, at 2.)

       (i)       For the period from February 1, 2008, through May 11, 2008: $419,947.58;

       (ii)      For the period from May 12, 2008, through December 5, 2008 (the date of Madison Realty's submission to the Court): $2,600,000; and

       (ii)      For the period from December 6, 2008, through the date of judgment:

            Amount to be calculated by the Clerk of the Court by multiplying the per diem rate of $12,500 by the number of days in the time period from December 6, 2008, through the date of judgment.

(d)       Late fee: $17,369.78.

(e)       Damages arising from the Borrowers' default: $385,295.47.

I also recommend that Madison Realty be granted two weeks from the date of the Court's decision with regard to this Report and Recommendation to file a supplemented application for an award of attorneys' fees.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have 10 (ten) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, United States Courthouse, 500 Pearl Street, Room 1320, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298., 300 (2d Cir 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      June 25, 2009

                              Respectfully submitted,

                              _____
                              DEBRA FREEMAN
                              United States Magistrate Judge

Copies to:

Hon. Loretta A. Preska, U.S.D.J.

Leonel V. Leyva, Esq.
Cole, Schotz, Meisel, Forman, & Leonard, P.A.
900 Third Avenue
16th Floor
New York, NY 10022

Mr. Thomas E. Morris
P.O. Box 271743
Flower Mound, TX  75027-1743

18